1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    SMITH BARNEY,                              CASE NO. CV F 08-0373 LJO GSA

12                    Plaintiff,          **ORDER ON DEFENDANT'S MOTION TO STAY**

13         vs.                                   (Docs. 85, 86.)

14    JEFF BURROW, et al.,

15                    Defendants.

16    _____/

17                            **INTRODUCTION**

18         Plaintiff Smith Barney seeks to stay this action pending underlying arbitration of Smith Barney's

19    client solicitation claims against defendants Jason Gordo ("Mr. Gordo"), Jeff Burrow ("Mr. Burrow),

20    and Valley Wealth, Incorporated ("Valley Wealth").[1] Smith Barney contends that the parties, pursuant

21    to agreements and pleading admissions, are bound to arbitrate the merits of their disputes before the

22    Financial Industry Regulatory Authority ("FINRA"). Mr. Gordo and Mr. Burrow acknowledge that they

23    are bound to FINRA arbitration and do not oppose a stay of this action as to them. However, Valley

24    Wealth contends that it is not a party to an agreement to require arbitration and that this action should

25    proceed as to disputes between it and Smith Barney. This Court considered Smith Barney's motion to

26    stay on the record and VACATES the October 1, 2008 hearing, pursuant to Local Rule 78-230(h). For

27    _____

28         [1]         Mr. Gordo, Mr. Burrow and Valley Wealth will be referred to collectively as "defendants."

1

the reasons discussed below, this Court STAYS this action in its entirety and retains jurisdiction to enforce prior orders and to enter and enforce the upcoming arbitration award.

## BACKGROUND

### Mr. Burrow And Mr. Gordo's Former Smith Barney Employment

Smith Barney is a division of Citigroup Global Markets Inc. and provides financial services, including purchase and sale of investment products.  Smith Barney employed Mr. Gordo and Mr. Burrow as financial advisors in its Modesto branch.  Mr. Gordo started his securities career with Smith Barney in May 2001, and Mr. Burrow, an already seasoned financial advisor, started his Smith Barney employment in February 2005.

Mr. Gordo and Mr. Burrow signed employee handbook receipts to "agree to be bound" by Smith Barney principles of employment, including "a predispute employment arbitration provision, as part of entering into, or continuing an employment relationship" with Smith Barney.  Smith Barney's Employment Arbitration Policy "makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee" and Smith Barney.  The Employment Arbitration Policy further provides that nothing in it "shall prevent either party from seeking from any court of competent jurisdiction injunctive relief in aid of arbitration, or where permitted under the NASD."[2]

On March 7, 2008, Mr. Gordo and Mr. Burrow resigned from Smith Barney and started conducting business under Valley Wealth, which had been incorporated on September 28, 2007.  Mr. Gordo and Mr. Burrow are Valley Wealth's sole shareholders.  Wealth Valley is registered with the Securities Exchange Commission as a investment advisory firm but is not a FINRA member.

### Smith Barney's Claims

Smith Barney contends that prior to and after their resignations from Smith Barney, Mr. Gordo and Mr. Burrow unlawfully took and used Smith Barney's confidential information to solicit Smith Barney clients.  In March 2008, Smith Barney filed this action to seek a temporary restraining order to

---

[2]   NASD is the National Association of Securities Dealers, Inc.

1  enjoin defendants to dispose of, destroy or alter Smith Barney's trade secrets and to solicit or accept

2  business from Smith Barney clients.  This Court issued a temporary restraining order favorable to Smith

3  Barney, which on April 3, 2008 filed papers to seek a permanent injunction.  After the parties' briefing,

4  this Court's May 16, 2008 order denied Smith Barney's requested preliminary injunction, modified the

5  prior restraints on defendants, and enjoined them from soliciting business from, or initiating contact or

6  communication with, Smith Barney clients or customers who were brought to Smith Barney or serviced

7  primarily at Smith Barney by advisors other than Mr. Gordo or Mr. Burrow.  Such prohibition expires

8  March 7, 2009.

9  **Underlying FINRA Arbitration**

10        Smith Barney is a FINRA member.  FINRA Rule 13200 generally requires that a dispute must

11  be arbitrated "if the dispute arises out of the business activities of a member or an associated person and

12  is between or among: Members; Members and Associated Persons; or Associated Persons."  Smith

13  Barney characterizes Mr. Gordo and Mr. Burrow as its "former associated persons."

14        Smith Barney filed a claim to initiate a FINRA arbitration to pursue misappropriation of trade

15  secrets and unlawful client solicitation claims against defendants and similar to those at issue in this

16  action.  On March 24, 2008, Mr. Gordo and Mr. Burrow signed and submitted, in their individual

17  capacities, Uniform Submission Agreements to arbitrate before FINRA their disputes with Smith

18  Barney.  Valley Wealth claims that it neither signed nor submitted a Uniform Submission Agreement

19  to arbitrate before FINRA disputes with Smith Barney.  Wealth Valley notes that it neither signed nor

20  is a party to an arbitration agreement with Smith Barney and that it did not exist when Mr. Gordo and

21  Mr. Burrow signed their employment arbitration agreements with Smith Barney.

22        In the FINRA arbitration, defendants filed an answer to Smith Barney's claim and noted:

23  "Arbitration before FINRA is required in this matter pursuant to Rule 13200 and by agreement of the

24  parties."  Defendants further responded in the FINRA arbitration with business tort and statutory unfair

25  competition counterclaims against Smith Barney.

26        Activity in the FINRA arbitration has been limited to pleadings – Smith Barney's claim,

27  defendants' answer and counterclaims, and Smith Barney's answer to the counterclaims.  Neither

28  hearings nor discovery has been conducted in the arbitration.

1

**Statements In The Parties' Pleadings In This Action**

2      Smith Barney notes that despite FINRA's arbitration requirement, FINRA Rule 13804(a)(1)

3  allows a party seek a judicial injunction:

4           In industry . . . disputes required to be submitted to arbitration under the Code,[3]
           parties may seek a temporary injunctive order from a court of competent jurisdiction.
5           Parties to a pending arbitration may seek a temporary injunctive order from a court of
           competent jurisdiction even if another party has already filed a claim arising from the
6           same dispute in arbitration . . . provided that an arbitration hearing on a request for
           permanent injunctive relief . . . has not yet begun.

7

8      Smith Barney points out that although it sought injunctive relief from this Court, its pleadings

9  in this action "expressly stated that the merits of the Parties' dispute would remain subject to binding

10  arbitration before FINRA."  Smith Barney points to language in its complaint:

11           43)   The Departed FAs' [Mr. Gordo and Mr. Burrow's] employment
           agreements provide that any disputes related to their employment at Smith Barney must
12           be decided by binding arbitration.  Smith Barney's claims are further subject to
           arbitration pursuant to FINRA Rules.

13                . . .

14
           45)   Under the NASD and FINRA Code of Arbitration, the merits of this
15  dispute are subject to binding arbitration before FINRA.

16  Smith Barney further points to its ex parte application for a temporary restraining order:

17           Although Smith Barney has applied to this Court for the provisional remedy of
           a TRO and preliminary injunction, the ultimate merits of Smith Barney's claims will be
18           resolved by arbitration.  However, this Court should grant Plaintiff's request for a TRO
           and preliminary injunction pending arbitration.

19

20      Defendants' answer to Smith Barney's complaint in this action acknowledges that FINRA

21  arbitration is the proper forum to determine the merits of the parties' claims:

22           9.   Binding arbitration before FINRA of the merits of this dispute is required
           in this matter pursuant to Rule 13200 and by agreement of the parties.
23
                . . .
24
           42.   Under NASD and FINRA Code of Arbitration Procedure, the merits of
25  this dispute are subject to binding arbitration before FINRA.

26           43.   Section 13804 of NASD and FINRA Code of Arbitration Procedure
           expressly permits applications to a Court of competent jurisdiction for provisional
27

28      [3]      The reference to "Code" is to the FINRA Code of Arbitration Procedure.

1   injunctive relief.  Plaintiff filed a Complaint in Federal Court for the Eastern District of
2   California and received a temporary restraining order ("TRO") against Defendants.

3   **DISCUSSION**

4   **Arbitration Policy**

5   Smith Barney contends that this action should be stayed to permit the parties to pursue their

6   claims in the FINRA arbitration.  Mr. Gordo and Mr. Burrow concede to stay this action, but Valley

7   Wealth seeks to continue to litigate this action.

8   Arbitration is a way to resolve disputes "that the parties have agreed to submit to arbitration."

9   *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920 (1995).  Arbitration clauses

10  limit a court's power: "Our role is strictly limited to determining arbitrability and enforcing agreements

11  to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua*

12  *v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1294

13  (1992); *see Muh v. Newberger, Loeb & Co., Inc.*, 540 F.2d 970, 972 (9th Cir. 1976) (If the parties have

14  agreed to arbitrate, "the entire controversy must be referred to the arbitrator, including the validity of the

15  contract.") A contractually based arbitration "can be brought to conclusion entirely extrajudicially, and

16  . . . the judiciary's supervision is limited to confirming, vacating, or correcting any resultant award."

17  *Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.*, 29 Cal.App.4th 1459, 1468, 35 Cal.Rptr.2d

18  200, 205 (1994)*; Brock v. Kaiser Foundation Hospitals*, 10 Cal.App.4th 1790, 1806, 13 Cal.Rptr.2d 678

19  (1992).

20  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., applies to written arbitration

21  agreements in employment cases.  Written agreements to arbitrate controversies arising out of an

22  existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

23  or in equity for the revocation of any contract."  9 U.S.C. § 2.  "In enacting § 2 of the federal Act,

24  Congress declared a national policy favoring arbitration and withdrew the power of the states to require

25  a judicial forum for the resolution of claims which the contracting parties agreed to resolve by

26  arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858 (1984).  "The enactment

27  establishes a strong federal policy in favor of the resolution of disputes through arbitration." *Alexander*

28  *v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3rd Cir. 2003).  "[F]ederal law presumptively favors the

1  enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3rd Cir.

2  1999).  The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of

3  arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction

4  of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*

5  *H. Cone Hospital v. Mercury Construction*, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983).

6        A federal court is bound to enforce agreements to arbitrate:

7        By it terms, the Act [FAA] leaves no place for the exercise of discretion by a district
        court, but instead mandates that district courts *shall* direct the parties to proceed to
8        arbitration on issues as to which an arbitration agreement has been signed. [9 U.S.C.] §§
        3, 4.  Thus, insofar as the language of the Act guides our disposition of this case, we
9        would conclude that agreements to arbitrate must be enforced, absent a ground for
        revocation of the contractual agreement.

10

11  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241 (1985) (italics in original).

12        Smith Barney notes that the FAA directs courts to stay court matters subject to arbitration:

13        If any suit or proceeding be brought in any of the courts of the United States upon any
        issue referable to arbitration under an agreement in writing for such arbitration, the court
14        in which such suit is pending, upon being satisfied that the issue involved in such suit or
        proceeding is referable to arbitration under such an agreement, shall on application of
15        one of the parties stay the trial of the action until such arbitration has been had in
        accordance with the terms of the agreement . . .

16

17  9 U.S.C. § 3.

18        "[A] court can properly stay a suit before it if *any* issue in the suit is arbitrable, even if some

19  issues are not." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir.) (italics in original), *cert.*

20  *denied*, 522 U.S. 912, 118 S.Ct. 294 (1997).  A district court shall stay further proceedings and order

21  arbitration if it determines that: (1) a valid agreement to arbitrate exists; and (2) the agreement

22  encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th

23  Cir.2000); *Lucas v. Gund, Inc.*, 450 F.Supp.2d 1125, 1130 (C.D. Cal. 2006). The "power to stay

24  proceedings is incidental to the power inherent in every court to control the disposition of the causes on

25  its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North*

26  *American Co.*, 299 U.S. 248, 254-255, 57 S.Ct. 163 (1936).  As "a matter of its discretion to control its

27  docket," a district court may stay of litigation among non-arbitrating parties pending the outcome of

28  arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 20, n. 23, 103 S.Ct.

1   927 (1983).

2       With these authorities in mind, this Court turns to the Smith Barney and Valley Wealth's points

3   for and against a stay of this action.

4   **Agreement To Arbitrate**

5       Smith Barney contends that the parties agreed to arbitrate the merits of their claims before

6   FINRA and have "availed themselves of FINRA's jurisdiction."  Smith Barney notes defendants'

7   repeated acknowledgments in their pleadings that the disputes' merits are to be arbitrated.  *See Brooks*

8   *v. Great Atlantic & Pac. Tea Co.*, 92 F.2d 794, 796 (9th Cir. 1937) ("admissions in the answer have the

9   force of evidence").  As such, Smith Barney seeks this Court's stay, retention of jurisdiction to enforce

10  prior orders, and entry and enforcement as judgment the upcoming arbitration award.

11      Mr. Gordo and Mr. Burrow concede that their disputes with Smith Barney are subject to FINRA

12  arbitration.  As such, the focus is whether the Smith Barney-Valley Wealth disputes should be arbitrated

13  and this action stayed in its entirety.  Valley Wealth insists that in the absence of its FINRA membership

14  and agreement to arbitrate, this action, not FINRA arbitration, is the proper forum to determine the Smith

15  Barney-Valley Wealth disputes.  Valley Wealth cites to a case addressing arbitration under the Labor

16  Management Relations Act, *United Steelworkers v. Warrior & Gulf Navigation*, 363 U.S. 574, 582-583,

17  80 S.Ct. 1347 (1960), which provides in pertinent part:

18      For arbitration is a matter of contract and a party cannot be required to submit to
        arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with
19      congressional policy in favor of settlement of disputes by the parties through the
        machinery of arbitration, the judicial inquiry under § 301 [of the Labor Management
20      Relations Act] must be strictly confined to the question whether the reluctant party did
        agree to arbitrate the grievance or did agree to give the arbitrator power to make the
21      award he made. An order to arbitrate the particular grievance should not be denied unless
        it may be said with positive assurance that the arbitration clause is not susceptible of an
22      interpretation that covers the asserted dispute. Doubts should be resolved in favor of
        coverage.

23

24      "The federal policy favoring arbitration does not extend to a determination of who is bound

25  because, as stated by the Supreme Court, the purpose of the Federal Arbitration Act is 'to make

26  arbitration agreements as enforceable as other contracts, but not more so.'" *Fleetwood Enterprises, Inc.*

27  *v. Gaskamp*, 280 F.3d 1069, 1074, n. 5 (5th Cir. 2002) (quoting *Prima Paint Corp. v. Flood & Conklin*

28  *Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 (1967)).

1    Valley Wealth further contends that it is not bound by Mr. Gordo and Mr. Burrow's arbitration

2  agreements under the following agency or contract principles:

3       1.    Incorporation by reference – Valley Wealth entered into no agreement which

4             incorporated the arbitration provisions of Mr. Gordo and Mr. Burrow's agreements with

5             Smith Barney;

6       2.    Assumption – Valley Wealth never assumed Mr. Gordo and Mr. Burrow's obligation to

7             arbitrate under their agreements with Smith Barney;

8       3.    Agency – Valley Wealth was neither an agent nor a principal of Mr. Gordo and Mr.

9             Burrow when they entered their agreements with Smith Barney given that Valley Wealth

10            did not exit until September 28, 2007;

11      4.    Alter Ego – No evidence exists for an alter ego theory to subject Valley Wealth to

12            arbitration;

13      5.    Estoppel – Valley Wealth neither exploited nor sought to enforce the employment

14            agreements between Mr. Gordo, Mr. Burrow and Smith Barney; and

15      6.    Third-Party Beneficiary – Valley Wealth is not a third-party beneficiary to Mr. Gordo

16            and Mr. Burrow's agreements with Smith Barney given that it did not exist when the

17            agreements were entered into.

18    Although Valley Wealth raises several points, it ignores a key point, that is, Valley Wealth has

19  acknowledged in its answers to this action and the FINRA arbitration that the "merits of this dispute"

20  are subject to FINRA arbitration.  F.R.Civ.P. 8(b)(1) requires a defendant responding to a complaint to:

21            (A) state in short and plain terms its defenses to each claim asserted against it;
      and
22
              (B) admit or deny the allegations asserted against it by an opposing party.
23

24  "A denial must fairly respond to the substance of the allegation."  F.R.Civ.P. 8(b)(2).

25    A "party is bound by what it states in its pleadings." *Soo Line Railroad Co. v. St. Louis*

26  *Southwestern Railway Co.*, 125 F.3d 481, 483 (7th Cir. 1997).  "Judicial admissions are formal

27  concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party

28  making them." *Keller v. United States*, 58 F.3d 1194, 1198, n. 8 (7th Cir. 1995).

8

In its answer in this action, Valley Wealth makes a judicial admission that it is bound to arbitration. Such admission is a binding concession and is Valley Wealth's agreement to arbitrate. Valley Wealth appears to know as much as it makes no effort to attempt to excuse such admission. Instead, Valley Wealth attempts to divert this Court's attention to impertinent issues, including agency and contract principles and waiver of objection to arbitrate. Valley Wealth had the opportunity to deny it was bound to arbitration but embraced that it is bound to it. Valley Wealth's inexplicable six-month delay to oppose arbitration suggests taking the position solely for strategic reasons, especially considering that Valley Wealth pursues counterclaims in the FINRA arbitration but not in this action, its supposed preferred forum.

Moreover, Valley Wealth ignores practical issues of proceeding in this action without Mr. Gordo and Mr. Burrow. Valley Wealth appears to envision a Smith Barney-Valley Wealth action in this Court running simultaneously with arbitration of the disputes among Smith Barney, Mr. Gordo and Mr. Burrow. Such concurrent litigation makes no sense and promotes waste of time and resources of the parties and this Court, contrary to goals of arbitration. Simultaneous litigation creates potential for inconsistent results. To avoid such danger and assuming Valley Wealth was not subject to arbitration, this Court would be compelled to stay this action as to Valley Wealth until resolution of arbitration. Under such scenario, the arbitration results offer potential collateral estoppel or res judicata effect to render this action a formality. The practicalities of the issues to be litigated favor a stay of this action and arbitration of the Smith Barney-Valley Wealth disputes, especially given that Smith Barney's claims against Valley Wealth arise from Mr. Gordo and Mr. Burrow's conduct.

**Waiver**

Lastly, Valley Wealth argues that its limited pleading in the FINRA arbitration does not waive its rights to challenge arbitration. Valley Wealth's judicial admissions in favor of arbitration render the waiver issue irrelevant. Valley Wealth has conceded to arbitration, and its level of participation in the FINRA arbitration makes no difference.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.      STAYS this action in its entirety pending resolution of the FINRA arbitration among

1    Smith Barney and defendants;

2    2.    RETAINS jurisdiction over the parties and subject matter to enforce prior orders and to

3    enter and enforce as judgment the upcoming arbitration award; and

4    3.    ORDERS the parties to file joint status reports every 120 days, the first of which is due

5    January 23, 2009.

6    IT IS SO ORDERED.

7    Dated:    September 25, 2008                    /s/ Lawrence J. O'Neill
                                                     **UNITED STATES DISTRICT JUDGE**
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28